

ABEL CASTILLO RANGEL,                )
                                     )
        Petitioner,                  )
                                     )
V.                                   )        Criminal No. 1:95CR486
                                     )        Civil Action No. 1:13CV50
UNITED STATES OF AMERICA,            )
                                     )
        Respondent.                  )
                                     )

## MEMORANDUM OPINION

This case comes before the Court on Abel Castillo Rangel's

("Petitioner") Motion to Vacate, Set Aside or Correct His

Sentence pursuant to 28 U.S.C. § 2255.

On September 30, 1992, Detective Chester Toney of the

Fairfax County Police Department responded to information

provided by a confidential informant regarding a marijuana

transaction that was to take place at a 7-Eleven on Old

Centreville Road in Prince William County. The confidential

informant told Detective Toney that two men by the name of

Hillman and McPeek were going to conduct a marijuana deal with a

man named "Abe Rangel." On that date and at that location,

Detective Toney observed three individuals, later identified as

Robert McPeek, Michael Hillman, and Zeets, exit Petitioner's

pickup truck carrying a bag that appeared to contain marijuana.

Law enforcement subsequently stopped and searched McPeek, Hillman, and Zeets and found Hillman in possession of 1 pound, 15.17 ounces of marijuana. Petitioner was not stopped by law enforcement at that time.

The following day, the confidential informant notified Detective Toney of a second marijuana transaction involving "Abe Rangel" that was to take place that evening at a McDonald's on Route 28 in Fairfax County. Detective Toney arrived at the McDonald's that evening and observed the same pickup truck driven by Petitioner on the night of September 30, 1992. Petitioner and a man, later identified as Francisco Isidoro, exited the McDonald's. The two men entered their respective vehicles and were subsequently stopped by law enforcement. Isidoro was found to have approximately $2,060 in currency and approximately two pounds of marijuana in his vehicle. Petitioner was found with $1,369 in his possession.

On February 17, 1993, law enforcement executed a search warrant for Petitioner's residence, located at 10324 Layton Hall Drive, Apartment 212 in Fairfax City, Virginia. Detective William Kitzerow testified that Petitioner was present at the residence and answered the door when law enforcement arrived. In the same bedroom closet, law enforcement located three bricks of marijuana and three additional bags of marijuana inside a black bag. In total, the six bags contained five pounds, four ounces

2

of marijuana. Plastic baggies and an Oasis triple beam scale were also located in that bedroom. Petitioner's fingerprints were found on two of the bags of marijuana. In addition, a wallet located in that bedroom contained both a Virginia and a Florida driver's license in Petitioner's name, with Petitioner's photograph. The wallet also contained a Social Security card in the name "Abel R. Castillo." The Government also introduced a Virginia DMV registration at trial that listed the Petitioner's residence as 10324 Layton Hall Drive, Apartment 212.

On November 28, 1995, a grand jury returned a ten-count Indictment against Petitioner and five others. Count One charged Petitioner with conspiracy to possess with the intent to distribute and to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Four charged Petitioner with possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Count Seven charged Petitioner with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1).

A jury trial was held on August 25, 2010. The Government presented the testimony of two co-conspirators, Ronnie Cadle and Michael Hillman, to establish Petitioner's involvement in the conspiracy. Hillman and Cadle testified that their involvement with Petitioner and his co-conspirators spanned a two to three-year period. Hillman first became involved with the group in

3

late 1990, continuing until his aforementioned arrest on September 30, 1992. In December of 1990, Hillman was approached by a man he knew as "Lilo." Hillman knew Lilo as the person who sold marijuana to Hillman's source of supply, who had been recently incarcerated. Lilo offered to front Hillman marijuana and Hillman began to sell marijuana with his friends. Hillman testified that after he began to purchase the marijuana, Lilo asked him if he could take a trip to San Antonio, Texas to obtain marijuana. Hillman introduced Cadle to Lilo, and Cadle also began to make trips to San Antonio to obtain marijuana. Cadle explained that Lilo was a part of a group of approximately seven individuals who distributed marijuana. Cadle and Hillman identified the members of this group as Lilo, Gringo, Leo, Flaco, and Petitioner. During the February 17, 1993 search of Petitioner's residence, law enforcement located a phonebook, which contained the name "Laylo" with a phone number and the name "Gringo" with two phone numbers. A business card for Lalo Maltos was also located in the wallet with Petitioner's driver's licenses.

Cadle testified that this group, including Petitioner, instructed him to drive to San Antonio by going through Tennessee to Arkansas and then through Dallas. Cadle would meet members of the group in San Antonio, where they would buy marijuana and load the marijuana into the vehicle. The members

4

of the group also selected Cadle's return route to Northern
Virginia. The group, including Petitioner, would pay Cadle for
making these trips. Cadle testified that Petitioner and Leo
became his primary contacts for his final three trips.

Cadle testified that he made between seven and ten trips to
San Antonio for the group, and Hillman reported making more than
five but less than ten trips to San Antonio to obtain marijuana.
Cadle and Hillman provided detailed descriptions of a number of
trips to San Antonio, Texas. Cadle described the trip that led
to his arrest in Mississippi on September 4, 1993. Cadle flew to
the Dallas, Texas airport where he was met by Petitioner and
Leo, and they rented a 1993 Mercury Sable. After it was
determined that there was not enough room underneath the vehicle
to store the marijuana, the car was exchanged for the 1988 Ford
Thunderbird that Cadle was driving when he was stopped in
Mississippi en route to Virginia. At trial, Officer David Pinson
of the Hinds County Sheriff's Department testified to conducting
a traffic stop on Cadle's vehicle on September 4, 1993. Through
the use of a drug dog, Officer Pinson discovered several
packages secreted between the grille and the radiator of Cadle's
vehicle containing approximately 27 pounds of marijuana.

Cadle described a second trip to San Antonio; Petitioner
and Leo informed Cadle that he was not going to drive his car
back to Virginia. Instead, Leo and Petitioner instructed Cadle

to take a Greyhound bus and to carry a suitcase containing approximately 50 pounds of marijuana. When Cadle arrived in Virginia with the marijuana, Gringo picked up Cadle and took him to an apartment where Leo and Petitioner were waiting. Cadle left the suitcase with Leo and Petitioner. Two weeks later, Cadle drove back down to San Antonio, retrieved his vehicle, and returned with another delivery of about 50 pounds of marijuana.

Hillman also recalled the details of two other trips to San Antonio. During his first trip, Hillman drove first to Texas and then into Mexico, where other members of the conspiracy selected the marijuana and packaged the marijuana, after which he then drove approximately 40 or 50 pounds of marijuana back to Northern Virginia. On another trip financed by Lilo, Hillman flew down to Texas and rode a bus back to Northern Virginia with approximately 30 or 40 pounds of marijuana.

Following the Government's case, the Court denied Petitioner's Rule 29 Motion for a Judgment of Acquittal. The jury found Petitioner guilty on Counts One, Four, and Seven of the Indictment. On November 19, 2010, Petitioner was sentenced to one hundred twenty-one (121) months of incarceration, five (5) years of supervised release, and a $300 special assessment. Petitioner appealed his conviction and sentence, and the United States Court of Appeals for the Fourth Circuit affirmed his conviction and sentence on October 26, 2011. The Supreme Court

6

denied Petitioner's Petition for a Writ of Certiorari on February 27, 2012.

A prisoner in custody under sentence of a federal court may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct the sentence. Relief can be claimed on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose such sentence, (3) the sentence was in excess of the maximum authorized by law, and (4) the sentence is otherwise subject to collateral attack. Hill v. United States, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255). A sentence is "otherwise subject to collateral attack" only when there exists an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). The scope of a § 2255 collateral attack is far more limited than an appeal, and thus a "collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Procedural default will bar consideration under § 2255 of any matter that should have been raised at trial, Wainwright v. Sykes, 433 U.S. 72 (1977), or that could have been pressed on appeal but was not, unless the petitioner demonstrates "cause" for his double procedural default and "actual prejudice" resulting from the error. Frady, 456 U.S. at 167-68.

Moreover, a court may grant relief under § 2255 only where the putative error is jurisdictional, constitutional, or an error of law that inherently results in a complete miscarriage of justice. Addonizio, 442 U.S. at 185; see also Davis v. United States, 411 U.S. 233 (1973). To show that failure to entertain a collateral attack would result in a miscarriage of justice, a defendant "must show actual innocence by clear and convincing evidence." United States v. Mikalajunas, 186 F.3d 490, 493 (1999). Although the doctrine of procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991). Further, the Supreme Court has expressed its preference that most cases for ineffective assistance of counsel claims be raised in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003).

Claims of ineffective assistance of counsel are evaluated by the rigorous two-pronged test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Strickland's first prong addresses a counsel's professional competence. To meet this standard, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," as established by

"prevailing professional norms." Strickland, 466 U.S. at 687-88. There is a "strong presumption" that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689-90. For a defendant to overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." Id. at 689. The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. The Court noted in particular that the reasonableness of a counsel's actions often depends on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691.

To satisfy the second prong of the Strickland test, a petitioner must show that counsel's errors were so serious as to deprive him of a fair trial, not merely that the outcome of the trial would have been different. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Assessing prejudice "requires the court deciding the ineffectiveness claim to 'consider the totality of the evidence before the judge or jury.'" Elmore v. Ozmint, 661 F.3d 783, 858 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 695). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700. Therefore, if a petitioner fails to prove prejudice, a reviewing court need not consider

the performance prong. <u>Fields v. Attorney General of Maryland</u>,
956 F.2d 1290, 1297 (4th Cir. 1992).

Petitioner alleges fourteen separate "grounds" that form
the basis for this Motion and his ineffective assistance claims.
He first argues that the delay between the Indictment and trial
violated his Sixth Amendment right to a speedy trial, and that
his attorney was ineffective for failing to file a motion to
dismiss the Indictment on those grounds. In analyzing a Sixth
Amendment speedy trial claim based on post-indictment delay, a
court must consider the following four factors: (1) the length
of the delay; (2) the reason for the delay; (3) the defendant's
diligence in asserting his Sixth Amendment right; and (4)
prejudice to the defendant resulting from the delay. <u>Barker v.
Wingo</u>, 407 U.S. 514, 530-33 (1972). Where, as here, a defendant
causes the delay himself, he cannot subsequently establish that
his speedy trial rights were violated. <u>See</u> <u>Rayborn v. Scully</u>,
858 F.2d 84, 90 (2d Cir. 1988). Although Petitioner used his
real name when he committed the charged drug offenses in late
1992 and early 1993, by the time the Indictment was returned in
November 1995, he had assumed the alias "Gabriel Ojeda." By his
own admission, he used that alias, as well as a different date
of birth, from 1994 until his arrest in this case in March 2010.
Thus, it cannot be said that the Government was negligent in
locating and apprehending Petitioner given that at the time the

Indictment was returned, he had already assumed a completely different identity. Because the delay was caused by Petitioner himself, his right to a speedy trial was not violated and his counsel's conduct in not moving to dismiss was reasonable.

Petitioner also alleges that his counsel was ineffective because he failed to raise a Batson challenge when the prosecutor "excluded the only potential Hispanic juror from the jury panel." Petitioner proffers no evidence that would support his claim that the Government exercised one of its peremptory strikes on a Hispanic venire person. Even if Petitioner could make such a factual showing, he cannot demonstrate that his trial counsel's alleged failure to raise a Batson challenge was deficient performance or prejudiced Petitioner. When a defendant raises a Batson challenge, he bears the burden of proving purposeful discrimination on the part of the prosecution. Batson v. Kentucky, 476 U.S. 79, 93 (1986). Such a challenge has three steps. First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if that prima facie case is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. Third, after the prosecutor's explanation is evaluated, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Hernandez v. New York, 500

U.S. 352, 358-59 (1991); see also United States v. Barnette, 211
F.3d 803, 812 (4th Cir. 2000).

To make out a prima facie case that a peremptory challenge
was based on purposeful discrimination, a defendant must show,
among other things, that the striking of venire members of the
defendant's race and other relevant circumstances "raise an
inference that the prosecutor used [peremptory challenges] to
exclude the veniremen from the petit jury on account of their
race." Batson, 476 U.S. at 96. Assuming, arguendo, that the
prosecutor here moved to strike the only Hispanic venire person
from the jury, that fact alone is insufficient to establish a
prima facie case. See, e.g., United States v. Farrior, 535 F.3d
210, 221 (4th Cir. 2008); Nickerson v. Lee, 971 F.2d 1125, 1134-
35 (4th Cir. 1992); United States v. Lane, 866 F.2d 103, 105-107
(4th Cir. 1989). Because striking one Hispanic juror during voir
dire does not establish a prima facie case of discrimination,
Petitioner's trial counsel did not perform in a deficient manner
when he did not assert a Batson challenge during jury selection.

Petitioner next claims that his counsel was ineffective
because he did not object when the prosecutor "knowingly used
perjured testimony in order to obtain petitioner's conviction"
and failed to effectively impeach the Government's witnesses.
Petitioner neither presents nor proffers evidence demonstrating
that the Government elicited perjured testimony from its

12

witnesses. Petitioner relies instead on blanket assertions of innocence and minor inconsistencies between the testimonies of some of the witnesses. While Detective Toney and Mike Hillman recalled certain minor details of the September 30, 1992 drug transaction differently, the fact remains that both witnesses remembered that Petitioner was involved in the distribution of marijuana to Hillman on that date. In an attempt to raise a reasonable doubt, Petitioner's trial counsel addressed the inconsistencies in the witnesses' testimony during closing arguments. In the jury instructions relating to credibility determinations, the Court instructed the jury to consider the extent to which the testimony of each witness was either supported or contradicted by other evidence. The jury, as the sole judges of credibility, credited the testimony of the Government's witnesses notwithstanding minor inconsistencies in their testimony. Thus, Petitioner's trial counsel did not perform in a deficient manner when he did not object to the Government's evidence.

Petitioner further argues that his trial counsel was ineffective for not objecting to the prosecutor's closing argument that contained, according to Petitioner, improper statements and bolstering of the Government's witnesses. The government errs when it bolsters or vouches for its own witness. United States v. Samad, 754 F.2d 1091, 1100 (4th Cir. 1984).

"[V]ouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witnesses. United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). In the instant case, it is clear that the prosecutor was not vouching for the Government's witnesses but merely articulating for the jury why the testimony of the Government's witnesses was worthy of belief. Even if the prosecutor's statements were deemed to be improper vouching, in light of the strength of the Government's evidence in this case, Petitioner cannot establish that the isolated statements during closing argument were so egregious that they affected his substantial rights and deprived him of a fair trial. See, e.g., Lockhart, 506 U.S. at 369; United States v. Chorman, 910 F.2d 102, 103 (4th Cir. 1990).

Petitioner alleges that his trial counsel was also ineffective for failing to object at trial to the admission of a confidential informant's statements to Detective Toney that an "Abe Rangel" was going to be involved in two separate marijuana transactions on September 30 and October 1, 1992. Petitioner asserts that admission of the confidential informant's statements violated his Sixth Amendment right to confront witnesses. However, this issue was already raised on appeal and rejected by the Fourth Circuit. Indeed, in its opinion, the

Fourth Circuit explained that because the confidential statements admitted through Detective Toney were not offered to prove that "Abe Rangel" was the individual involved in the two transactions, trial counsel had no legitimate hearsay objection.

Petitioner next claims that his trial counsel was ineffective by entering into a stipulation regarding the results of laboratory tests and fingerprint analysis without his consent. Assuming for the sake of argument that trial counsel did not consult with Petitioner, trial counsel's decision to enter into the stipulation was a matter of tactics, and not objectively unreasonable. See, e.g., Poole v. United States, 832 F.2d 561, 564 (11th Cir. 1987); Sellman v. United States, 92 F. Supp. 2d 475, 480 (D. Md. 2000) (noting that stipulations are tactical decisions). An attorney's tactical decisions are entitled to a presumption of correctness. Evans v. Thompson, 881 F.2d 117 (4th Cir. 1989). Petitioner fails to overcome this presumption and does not even allege prejudice stemming from his attorney's decision to stipulate to the results of forensic examinations. Accordingly, Petitioner cannot establish that counsel's decision to enter into the stipulation fell below an objective standard of reasonableness.

Petitioner next alleges that his counsel was ineffective for failing to object to the in-court identifications made by Cadle and Officer Kitzerow. Petitioner asserts that the

identifications were unduly suggestive and unreliable because he was "the only Hispanic male in the courtroom." At the time Petitioner committed the offenses with which he was charged, these two witnesses had considerable contact with Petitioner and, as a result, were very familiar with his appearance. Cadle testified that for a two to three-year period, he transported marijuana for Petitioner. Officer Kitzerow testified that he was involved in the search of Petitioner's residence on February 17, 1993, and that he photographed Petitioner on that day, and the photograph was admitted in evidence. Given the nature and extent of the contact Cadle and Officer Kitzerow had with Petitioner, there were absolutely no grounds upon which defense counsel could challenge their in-court identification of Petitioner.

Petitioner further claims that his attorney was ineffective for not moving to suppress the photograph taken by Officer Kitzerow or the phonebook seized from his residence on February 17, 1993. While Petitioner alleges that the phonebook did not belong to him, the ownership of the phonebook would not have been a proper basis to suppress it. The phonebook was lawfully found in Petitioner's residence and seized pursuant to a valid search warrant. As for the photograph of Petitioner taken by Officer Kitzerow, Petitioner contends that the photo was unreliable and added to the risk of misidentification. To the contrary, the photograph taken of Petitioner in February 1993

was compelling evidence establishing that the person who stood trial in August 2010 for his involvement in a marijuana distribution conspiracy in 1992 and 1993, was the same person who, during a search of his residence on February 17, 1993, was found to be in possession of five pounds of marijuana.

Petitioner next claims that his attorney provided deficient representation by failing to file a motion for severance and by failing to request a jury instruction that directed the jury not to use evidence from one count in determining Petitioner's guilt on other counts. The Indictment charged Petitioner with conspiracy to possess with the intent to distribute marijuana and to distribute over 1,000 kilograms of marijuana and the substantive counts of distributing marijuana and possessing marijuana with the intent to distribute it. Rule 8(a) of the Federal Rules of Criminal Procedure permits joinder of separates offenses where "the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." See also United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005). There is no question that the three offenses with which Petitioner was charged were of the same or similar character and constituted parts of a common unlawful scheme, namely, the conspiracy to distribute marijuana. Indeed, the offenses charged in the two substantive counts were also overt

acts of the conspiracy. Any motion for severance filed on behalf
of Petitioner would have been baseless and therefore trial
counsel did not provide deficient representation on this matter.

Petitioner next contends that his trial counsel provided
ineffective assistance of counsel because he failed to move for
a jury instruction requiring the jury to determine the quantity
of marijuana attributable to Petitioner under Pinkerton
principles. Rather than instructing the jury on Pinkerton
principles, the Court provided a special verdict form to the
jury that listed varying amounts of marijuana, and instructed
them as follows:

> As to Count 1, if you should find the defendant guilty
> as to Count 1, then underneath are amounts of drugs
> and you should also check the amount that you find
> that was involved as to Count 1.

After deliberating, the jury returned a guilty verdict on all
three counts and indicated in the special verdict form that they
determined the amount of marijuana involved in the conspiracy to
be 1,000 kilograms or more. In United States v. Collins, 415
F.3d 304, 313-315 (4th Cir. 2005), the Fourth Circuit held that
the district court erred in not instructing the jury that for
purposes of determining a threshold drug quantity under 21
U.S.C. § 841(b), the jury must determine what amount of cocaine
base was attributable to the defendant using Pinkerton
principles. Significantly, the Fourth Circuit recognized in

Collins that the district court could proceed to re-sentencing the defendant under the default provision in § 841(b), which provided for a penalty range of zero to twenty years imprisonment. Id. at 315. As in Collins, Petitioner's "conviction under § 846 is sound," Collins, 415 F.3d at 314. Even if the Court erred in instructing the jury on how to determine the quantity attributable to Petitioner for purposes of determining the applicable mandatory minimum under 21 U.S.C. § 841(b), Petitioner would nonetheless face a maximum term of twenty years imprisonment on Counts One, Four, and Seven. See 21 U.S.C. § 841(b)(1)(C). In light of the evidence presented at trial, there was more than a sufficient basis for the Probation Officer to determine that the Government had established by a preponderance of the evidence that Petitioner was accountable for over 1,000 kilograms of marijuana pursuant to U.S.S.G. § 1B1.3. As a result, the base offense level would remain at 32 and the resulting guideline range would be 121 to 151 months imprisonment. Petitioner's sentence– 121 months imprisonment – is within the statutory range of zero to twenty years imprisonment. Accordingly, Petitioner suffered no prejudice as a result of the alleged failure of his counsel to object to the Court's jury instructions.

Petitioner next claims that the evidence adduced at trial was constitutionally insufficient to sustain the jury's finding

that the conspiracy involved 1,000 kilograms or more of marijuana. A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden. United States v. Beidler, 110 F.3d 1064, 1067(4th Cir. 1997). If, after reviewing the evidence in the light most favorable to the government, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the defendant's convictions should be affirmed. See, e.g., Jackson v. Virginia, 443 U.S. 307, 318-19 (1978); United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc). The appellate court reviews both circumstantial and direct evidence and the government is given "the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Jackson, 124 F.3d 607, 613 (4th Cir. 1997). Even the uncorroborated testimony of a single witness may be sufficient to establish guilt, regardless of whether that witness is an accomplice, a co-defendant, or an informant. United States v. Wilson, 115 F.3d 1185, 1189-90 (4th Cir. 1997). Applying these principles here, it is clear that the jury had more than sufficient evidence to find that Petitioner and his conspirators were involved in distributing over 1,000 kilograms of marijuana. The testimony of Cadle and Hillman established beyond a reasonable doubt that over a two-year period Petitioner and his conspirators regularly employed

couriers to transport 50 pound quantities of marijuana from Texas to Northern Virginia. Cadle's testimony further established that Petitioner and his conspirators maintained a trailer in Chantilly, Virginia, and kept it stocked with pound quantities of marijuana for distribution. The testimony of Cadle and Hillman was corroborated by Detective Toney, Officer Pinson, Officer Kitzerow, and Trooper Clark.

Petitioner next argues that his attorney was ineffective at sentencing for failing to challenge the Probation Officer's determination that the base offense level was 32 on all three counts. The Probation Officer determined that the base offense level on the conspiracy count was 32 because the jury found that the evidence presented at trial established beyond a reasonable doubt that Petitioner conspired with others to possess with intent to distribute and to distribute over 1,000 kilograms of marijuana. Even without the jury's finding, the base offense level would have been 32 based on the evidence presented at trial and the information contained in the Presentence Report. Pursuant to U.S.S.G. § 1B1.3, Petitioner was properly held accountable for 1,000 kilograms or more of marijuana. Moreover, the drug quantity on the conspiracy count was properly used to calculate the base offense level for the substantive offenses because Petitioner's participation in the conspiracy was relevant

conduct pursuant to U.S.S.G. § 1B1.3. Accordingly, trial counsel had no basis to object to the Probation Officer's determination.

Petitioner asserts that his counsel was ineffective for failing to argue at sentencing that Petitioner was "safety-valve" eligible pursuant to U.S.S.G. § 5C1.2. To qualify for a two-level reduction under § 2D1.1(b)(16) and safety valve treatment under § 5C1.2, a defendant must, among other things, truthfully provide to the government all information he has concerning the offenses no later than the time of the sentencing hearing. U.S.S.G. § 5C1.2(a)(5). Petitioner never did this. Rather than enter a guilty plea and provide the Government all information and evidence he had concerning the offenses of conviction, Petitioner elected to go to trial and falsely denies his participation in the charged offenses to this day.

Petitioner next contends that his trial counsel was ineffective because he failed to argue at sentencing that Petitioner was a minor or minimal participant warranting a role reduction pursuant to U.S.S.G. § 3B1.2. A defendant is eligible for a four-point reduction in the offense level if he is found to be a "minimal participant," and a two-point reduction in the offense level if he is found to be a "minor participant." U.S.S.G. § 3B1.2. The "minimal participant" adjustment "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of the group."

U.S.S.G. § 3B1.2, Application Note 4. A "minor participant" is "a defendant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 5. "The critical inquiry in determining whether a defendant is entitled to an adjustment for his role in the offense [is]... whether the defendant's conduct is material or essential to committing the offense." United States v. Dawson, 587 F.3d 640, 645-48 (4th Cir. 2009). Petitioner played a significant and essential role in this drug trafficking conspiracy. As was established by the testimony of Cadle and Hillman, Petitioner was involved in the distribution of marijuana for two to three years and coordinated the interstate transportation of 30 to 50 kilogram shipments of marijuana for the criminal organization. Petitioner was also involved in selling pound quantities of marijuana in the Eastern District of Virginia, as was established by the testimony of Hillman, Detective Toney, and Officer Kitzerow. Based on the facts adduced at trial, Petitioner clearly did not qualify for a mitigating role reduction at sentencing and thus, counsel's alleged failure to request a minor role reduction was neither deficient performance nor prejudicial.

Petitioner also contends that his appellate lawyer was ineffective because he failed to raise on appeal that the district court erred in denying his motions for new counsel. On

the eve of his scheduled trial, Petitioner's court-appointed lawyer filed a motion for the appointment of new counsel, citing "irreconcilable differences between [Petitioner] and [defense counsel]" and Petitioner's request for a new attorney. Over the Government's objection, the district court granted the motion and appointed new counsel. Petitioner proceeded to the new trial date with his second court-appointed lawyer. Following the trial, Petitioner filed two separate motions for the appointment of new counsel. The first was filed by trial counsel on September 30, 2010, and stated that Petitioner had "expressed dissatisfaction with counsel's representation, particularly during the trial." That motion was denied by the Court following a hearing on October 8, 2010. The second motion was filed on November 4, 2010, and it was set for a hearing on November 19, 2010. At the hearing, Petitioner made general allegations that he was dissatisfied with the manner in which trial counsel had carried out his case. However, Petitioner gave no specific examples to substantiate any of his conclusory claims and upon hearing these allegations, the Court denied Petitioner's request for another attorney, stating that Petitioner has able counsel and any future request for new counsel will be denied. The Court then proceeded to sentencing. On appeal, Petitioner was represented by another court-appointed lawyer. In his brief, Petitioner's appellate lawyer did not challenge the district

court's denial of the two post-trial motions for new counsel. Once competent counsel is appointed to represent an indigent defendant, it is within the court's broad discretion to grant or deny a motion for substitute counsel. The Sixth Amendment does not guarantee a "meaningful relationship or good rapport with an attorney, just constitutionally adequate representation." Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Here, the district court's discretion was most providently exercised by denying Petitioner's two motions for new counsel. As the district court recognized, Petitioner was represented at trial by "very able counsel." Because there was absolutely no basis for arguing that the district court had abused its discretion, appellate counsel performed his legal services in a reasonable manner when he elected not to raise those claims on appeal. Moreover, had appellate counsel argued on appeal that the district court erred in denying Petitioner's motions for new counsel, that argument would certainly have been rejected by the Fourth Circuit. Therefore, Petitioner suffered no prejudice.

As his very last ground for habeas relief, Petitioner restates most, if not all, of the claims he has already raised in his Petition. Citing these alleged errors, he asks the Court to conduct "a cumulative error analysis." As has been demonstrated above, none of these ineffective assistance claims have any merit. Accordingly, when taken together, they do not

amount to a cognizable claim for habeas relief. See, e.g., Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998); Arnold v. Evatt, 113 F.3d 1352, 1364 (4th Cir.1997).

In addition to raising claims previously asserted in his Petition, Petitioner contends, without any factual basis, that his trial counsel was ineffective for the following reasons: counsel did not dedicate sufficient time to his case; counsel failed to hire an investigator or conduct any pretrial investigations; counsel failed to interview the majority of witnesses in police reports; counsel failed to file a motion to disclose the confidential informant's identity; counsel failed to file suppression motions; counsel failed to object to leading questions; and counsel failed to adequately cross-examine witnesses. Given that these bald assertions are insufficient to demonstrate deficient performance on the part of his trial counsel or prejudice resulting therefrom, Petitioner fails to assert any cognizable claim under § 2255.

This Court must also deny Petitioner's March 21, 2013 Motion to Amend his Previous Motion to Vacate as it is time-barred. In the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress established a one-year period of limitation governing motions for collateral relief under § 2255. 28 U.S.C. § 2255 ¶ 6. The one-year statute of limitations for filing a § 2255 petition begins to run from the day on which the

challenged conviction becomes final. See 28 U.S.C. § 2255(f), United States v. Dodson, 291 F.3d 268, 275-76 (4th Cir. 2002). Where, as here, a prisoner's conviction is affirmed on appeal, the conviction becomes final when the Supreme Court affirms the conviction or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires. See, e.g., Clay v. United States, 537 U.S. 522 (2003). Petitioner's conviction was affirmed by the Court of Appeals for the Fourth Circuit on October 26, 2011, and the Supreme Court denied his Petition for a Writ of Certiorari on February 27, 2012. Therefore, any § 2255 petition was due to be filed no later than February 26, 2013. Equitable tolling of the § 2255 limitations period is available only in "those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). A defendant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Petitioner has not only failed to prove that he pursued his rights diligently, but he has also failed to demonstrate that extraordinary circumstances prevented him from raising any of these claims of ineffective assistance of counsel by February 26, 2013. Petitioner was aware

of his counsel's alleged failures before the jurisdictional deadline. If the defense counsel's performance was deficient during the pretrial stage of the proceedings in the manner alleged by Petitioner in his Motion to Amend, Petitioner certainly had actual or constructive knowledge of those alleged failures long before the one-year limitations period. Because Petitioner has not established an entitlement to equitable tolling of the one-year limitations period, this Court must deny his Motion to Amend seeking to supplement his § 2255 Petition.

For the foregoing reasons, the Petitioner's Motion must be denied.

An appropriate Order shall issue.

_____/s/_____

Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 2 , 2013